## ARMANDO GARZA MIRELEZ v. STATE

No. 32,528. December 7, 1960

Motion for Rehearing Overruled January 25, 1961

*Murray J. Howze*, Monahans, for appellant.

*George Hansard*, District Attorney, Lamesa, and *Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge

The offense is murder; the punishment, 30 years.

Mrs. Sue Holland, radio dispatcher at the sheriff's office at Seminole, testified that on the night in question appellant came in the office alone, announced that he had killed his wife, placed a pistol on the counter, and asked that she call an ambulance. She

stated that she did so, took the pistol into custody, and called one of the patrol cars. She identified the pistol introduced in evidence.

Officer Riordan testified that he received the call, went to the sheriff's office, and found appellant, who told him that he had shot his girl friend, and that he took appellant into custody.

Mrs. Longoria, mother of deceased, testified that her daughter had been living with appellant and she was living with them; that on the night in question appellant came to the kitchen door where she was, asked her if it was true that she was looking for a house to move to, and that when she answered him in the affirmative he turned around and began shooting into the room where deceased, her daughter, was seated on the sofa. She stated that after the shooting appellant left the house without saying a word. A sister of deceased, who was present at the time, testified to substantially the same facts as her mother. It was shown that deceased was shot nine times.

Appellant's confession, given within two hours after the shooting, recites that he started living with deceased about five weeks before; that they had tried to get married but they could not secure a license because deceased was too young but that they planned to marry when possible; that the day before the shooting they had a little trouble and deceased refused to sleep with him but slept with her mother instead; that on the night in question he took off his clothes and told deceased to come to bed with him but she refused and told him that she and her mother were going to move away from him; that he inquired of her mother if this was true and when she said "yes" he got his gun and began shooting. It recites that he was mad because he did not want anybody else to have the deceased and that he would rather have her dead if he couldn't have her.

Appellant's mother testified that in his youth appellant would not play like other boys but would play cards with a doll; that one night he screamed out in his sleep, got up, grabbed a cat which happened to be near and killed the cat; that one time he shot himself in the finger; that he wasn't too normal mentally; and that she had seen him at times when she thought he was actually crazy and did not know right from wrong. She admitted on cross examination that she had never whipped him as he was growing up and that she might have spoiled him.

Appellant's aunt corroborated a portion of his mother's testimony and stated that at times appellant acted like a child of

eleven, wasn't well in the head, and said, "I can't say for sure, but I think he didn't know right from wrong."

Appellant's cousin testified that he went off "on a tantrum about something" at times and that on one occasion when his automobile would not start he hit it with a crank; that he once saw him drink coffee that was too hot, and thought that at times he was sane and at other times insane. All of his relatives admitted that deceased was appellant's first girl friend.

Appellant, testifying in his own behalf, stated that he did not remember the acts of peculiarity attributed to him by his kinspeople, but gave a logical account of his courtship of deceased and of their brief life together, of the quarrel which caused deceased to sleep with her mother, and of that which preceded the shooting. He said that deceased said she was leaving him for good and that he did not want to lose her. He denied that he remembered the shooting or giving the confession to Mr. Stephen L. Haley, the county attorney, but admitted that he loved the deceased very much, that the pistol introduced in evidence was his, and that it was the gun he "did it with."

Deputy Sheriff Bell testified that he had known appellant for a number of years, that appellant had never given him any reason to believe that he was insane, and expressed the opinion that appellant knew the difference between right and wrong.

Chief of Police Gaddies testified that he had known appellant for more than a year and expressed the opinion that he was sane.

The jury resolved the issue of appellant's sanity against him, and we find the evidence sufficient to support the conviction.

Two questions are presented in appellant's brief. The first related to a motion for continuance, but is not properly before this court for decision. The motion which is found in the transcript is shown to be filed, but there is nothing to show that it was called to the attention of the trial judge or that it was acted upon by him. In Perry v. State, 160 Tex. Cr. Rep. 8, 266 S.W. 2d 171, we said, "Article 760e, V.A.C.C.P., authorizes us to pass upon the question only where, in addition to the motion, the order entered thereon and the exception to the ruling is shown in the transcript."

The next question related to the charge. There were no objections leveled to the charge at the time it was submitted.

Appellant now complains that the court committed fundamental error in failing to require a finding of sanity at the time of the commission of the offense as well as at the time of the trial as provided for by the amendment of Article 932b, V.A.C.C.P., which became effective January 1, 1958. Reliance is had upon Freeman v. State, 166 Tex. Cr. Rep. 626, 317 S.W. 2d 726. In Freeman, there were vigorous objections to the charge. In the case at bar, there were none. If appellant wanted a finding by the jury on such question, he should have requested the court to submit the same. In view of the meagerness of the evidence which would indicate that appellant was of unsound mind, we hold that the charge was not fundamentally erroneous.

Finding the evidence sufficient and no reversible error appearing, the judgment is affirmed.

### ON MOTION FOR REHEARING

DICE, Judge

On original submission, we did not pass upon the question of appellant's motion for continuance because the record did not show that the motion was called to the attention of the trial judge. In supplemental transcript, appellant attempts to show by certain entries on the court's criminal docket that the motion was presented to the court and that the same was overruled with an exception to such ruling reserved by appellant. This court has no authority to accept mere docket entries in lieu of judgments and orders. 4 Tex. Jur. 176, sec. 126, Appeal and Error—Criminal Cases; Demus v. State, 111 Tex. Cr. R. 237, 16 S.W. 2d 251.

We have again considered appellant's complaint of the court's charge and remain convinced there is no fundamental error therein.

The motion is overruled.

Opinion approved by the Court.